# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEVIN IRWIN SHORT, | * | |
| Petitioner | * | |
| v. | * | Civil Action No. PX-17-1847 |
| WARDEN RICHARD GRAHAM, JR., and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents | * | |
| | *** | |

## MEMORANDUM OPINION

On July 5, 2017, Petitioner Kevin Irwin Short filed a 28 U.S.C. § 2241 petition regarding the revocation of his diminution credits following a prison disciplinary hearing. ECF No. 1. Respondents have submitted a response, ECF No. 4, and Petitioner has filed a reply and accompanying affidavit, ECF Nos. 7, 8. Accordingly, the matter is now ripe for this court's consideration. After review of these filings, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6. For the reasons set forth herein, the court shall DENY and DISMISS the Petition with prejudice.

## FACTS

In February 2001, Petitioner was sentenced to 25 years' imprisonment with 7 years suspended for carjacking. ECF No. 1-1 at 35. In June 2001, Petitioner was sentenced to life imprisonment with all but 30 years suspended for first degree rape. ECF No. 1-1 at 37. These sentences were ordered to run concurrently. ECF No. 1-1 at 37.

In August 2005, Petitioner was incarcerated at the Maryland Correctional Institution—Jessup (MCI-J). ECF No. 1 at 4. On August 5, 2005, Petitioner attacked a prison guard and

stabbed another inmate multiple times. ECF No. 1-1 at 1. On August 7, 2005, Petitioner was served with a "Notice of Inmate Rule Violation and Disciplinary Hearing," summarizing the attack and identifying which institutional rules Petitioner was charged with violating. ECF No. 1-1 at 1 (capitalization altered). On August 8, 2005, Petitioner was transferred from MCI-J to the Maryland Correctional Adjustment Center (MCAC). ECF No. 1 at 6. Petitioner was not given advance notice of or an opportunity to argue against this transfer. ECF No. 1 at 9-10. While awaiting his disciplinary hearing at MCAC, Petitioner was placed in administrative segregation; he received no advance notice of or opportunity to be heard about this placement. ECF No. 1 at 10-11.

Petitioner's disciplinary hearing was originally scheduled for August 12, 2005, but this hearing was delayed. ECF No. 1-1 at 3. On August 22, 2005, Hearing Officer Ashby ("Ashby") dismissed several unrelated disciplinary charges against Petitioner because Petitioner did not receive a disciplinary hearing within the time specified by departmental directives and no explanation for the delay was provided. ECF No. 1 at 6, 13-14; ECF No. 1-1 at 4-5. On August 24, 2005, Ashby conducted Petitioner's disciplinary hearing concerning the charges arising out of the August 5 incident. ECF No. 1-1 at 6-7. Petitioner claims that at the hearing he argued that the charges should be dismissed because the hearing was not timely conducted and no exceptional circumstances justified the delay. ECF No. 1 at 14. Ashby waived the time requirement, apparently stating that his son was murdered by gang members and that he was not going to allow "gangbangers [like Petitioner] to get away with this" rule violation. ECF No. 1 at 7, 14.

Petitioner was found guilty of several rule violations at the disciplinary hearing. ECF No. 1-1 at 3.[1] Among other sanctions, Petitioner's 1930 diminution credits[2] were revoked. ECF No. 1-1 at 3. Subsequently, Petitioner was criminally charged with assaulting a corrections officer, a charge stemming from the August 5 incident. He was convicted and sentenced to five years' imprisonment, consecutive to his underlying terms of imprisonment. ECF No. 1-1 at 33.

Petitioner alleged that he filed an administrative grievance concerning the disciplinary hearing and revocation of diminution credits and that the grievance was "found meritorious in part by the Asst. Warden Crowder who said upon release from [MCAC] petitioner would receive credits. Petitioner appealed that d[e]cision to [the Inmate Grievance Office ("IGO")] and IGO refused to make the Asst. Warden give petitioner['s] credits back." *Short v. Shearin*, RWT-13-3874, ECF No. 1 at 6 (capitalization altered). In August 2013, Petitioner sought judicial review of the IGO decision in the Circuit Court for Alleghany County. *Short*, RWT-13-3874, ECF No. 6-7.

In December 2013, Petitioner filed a 28 U.S.C. § 2241 Petition with this court, arguing that his diminution credits had been unconstitutionally revoked. *Short*, RWT-13-3874, ECF No. 1. Noting that the appeal of the IGO decision was still pending in Alleghany County when Petitioner filed his § 2241 Petition, the court dismissed the Petition without prejudice based on Petitioner's failure to exhaust. *Short*, RWT-13-3874, ECF No. 10 at 3-5.

---

[1] The state had filed a copy of the hearing record in a prior case brought by Petitioner. *Short v. Adisa*, RWT-05-2600, ECF No. 15-5 at 3-7.

[2] "Diminution credits," which can be earned for good behavior, performing work assignments, participating in educational programs, and/or participating in designated special projects, are subtracted from the prisoner's term of confinement to arrive at the date on which he is entitled to be released under mandatory supervision. Md. Code Ann. Corr. Serv. §§ 3-704 to 707; 7–501. Petitioner states that 1930 diminution credits were revoked, ECF No. 1 at 1; however, the record indicates that 1750 credits were revoked as a consequence of this particular incident, ECF No. 1-1 at 3 (noting that 1641 good behavior and 109 special projects credits were revoked for August 5 attack); *see also* ECF No. 1-1 at 8 (noting that a total of 1930 diminution credits have been revoked over the entire term of Petitioner's imprisonment). Because the precise figure is irrelevant for purposes of resolving the motion at issue, the court will use Petitioner's figure of 1930 diminution credits.

3

In April 2014, the Alleghany Circuit Court affirmed the IGO decision. ECF No. 7 at 5. In December 2014, Petitioner filed a habeas corpus petition, which reiterated his claims regarding the disciplinary hearing and diminution credits, in the Circuit Court for Alleghany County. The court denied the petition on July 14, 2016. ECF No. 1-1 at 11-12. On August 18, 2016, Petitioner mailed his Application for Leave to Appeal to the Court of Special Appeals; it appears that the court received the Application on September 2, 2016. ECF No. 1-1 at 13-24, 27. On October 25, 2016, the Court of Special Appeals denied the Application as untimely filed. ECF No. 1-1 at 27. Petitioner then filed a Motion for Reconsideration that the court denied as untimely on December 9, 2016. ECF No. 1-1 at 28. On December 20, 2016, Petitioner mailed a Petition for Writ of Certiorari to the Maryland Court of Appeals. ECF No. 1-1 at 30. In May 2017, Petitioner contacted the Court of Appeals to inquire about the status of his case, and learned that the Court had never received his Petition. ECF No. 1-1 at 30-31.

## CLAIMS FOR RELIEF

On June 28, 2017, Petitioner filed this § 2241 Petition, in which he raises the following grounds for habeas corpus relief: (1) "MCI-J prison officials violated petitioner's procedural due process rights by transferring petitioner to Md. Supermax facility (MCAC), without any notice of transfer (written or verbal) and no opp[o]rtunity to challenge his transfer," ECF No. 1 at 8; (2) after arriving at MCAC, "[p]etitioner was placed on administrative segregation without notice of Assignment to Administrative Segregation . . . for (17) days after placement in confinement, [with] no opp[o]rtunity to present his views to the decision maker, and received no review by case management specified in statute;" *id.* at 11; (3) "MCAC'S Hearing Officer failed to comply with Due process and state laws before revoking good conduct credits," *id.* at 12; and (4) "The substantive and procedural provisions of [Departmental Directives 105-4 [and] 105-5 . . . [which

4

were used] to revoke previously Earned credits at that time was invalid, in part because they had not been adopted in conformance with the 'APA,'" *id.* at 16.

## DISCUSSION

The petition involves questions of State law and is therefore subject to the exhaustion requirement of 28 U.S.C. § 2254(b). The exhaustion requirement applies to petitions filed pursuant to 28 U.S.C. § 2241. *See Francis v. Henderson*, 425 U.S. 536, 538 (1976) ("This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power."); *see also Timms v. Johns*, 627 F. 3d 525, 531 (4th Cir. 2010) (applying exhaustion requirements to § 2241 petition challenging civil commitment). Thus, before filing a federal habeas petition, petitioner must exhaust each claim presented by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U. S. 509, 521 (1982). The claim must be fairly presented to the state courts; this means presenting both the operative facts and controlling legal principles. *See Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citations omitted), *cert. denied*, 121 S. Ct. 1194 (2001). Exhaustion includes appellate review in the Maryland Court of Special Appeals and the Maryland Court of Appeals. *See Granberry v. Greer*, 481 U.S. 129, 134-35 (1987). The state courts are to be afforded the first opportunity to review federal constitutional challenges to state convictions in order to preserve the role of the state courts in protecting federally guaranteed rights. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973).

Sentence and diminution credit calculation disputes generally are issues of state law and do not give rise to a federal question. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pringle v. Beto*, 424 F.2d 515, 516 (5th Cir. 1970); *see also McCray v. Rosenblatt*, 1994 WL 320212 (4th Cir. July 6, 1994) (per curiam) (unpublished). A violation of a state law which does not infringe

upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). A dispute over diminution credits generally does not rise to this level. *See Willeford v. Estelle*, 538 F.2d 1194, 1197 (5th Cir. 1976). If a "claim . . . rests solely upon an interpretation of [state] case law and statutes, it is simply not cognizable on federal habeas review." *Wright v. Angelone*, 151 F. 3d 151, 157 (4th Cir. 1998); *see also Smith v. Moore*, 137 F.3d 808, 822 (4th Cir. 1998) (refusing to entertain claim that jury instruction misstated South Carolina law).

**1. Exhaustion**

The parties dispute whether Petitioner properly exhausted his state avenues for habeas relief. The state contends that Petitioner failed to file a timely petition for writ of certiorari with the Maryland Court of Appeals, thereby failing to complete the final step necessary to exhaust state remedies. ECF No. 4 at 7. Although Petitioner acknowledges that his petition for a writ of certiorari was never docketed with the Court of Appeals, he asserts that he mailed the petition and discovered five months after mailing that the Court had not received the petition. ECF No. 7 at 5. Thus, he argues that he diligently tried to exhaust his state habeas remedies, but was unable to do so for reasons beyond his control, essentially arguing that equitable principles justify a determination that he has exhausted his state remedies. However, because the matter can be readily resolved on the merits, the court declines to delve into consideration of the parties' exhaustion arguments, and instead turns directly to the substance of Short's petition. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

State.").

**2. Pre-hearing claims**

First, the court addresses Petitioner's arguments concerning his transfer to MCAC and confinement in administrative segregation pending his disciplinary hearing. The purpose of habeas corpus proceedings is to attack the constitutionality of one's present custody. It is undisputed that Petitioner is no longer at MCAC.[3] Likewise, Petitioner does not claim that he is currently in administrative segregation. Accordingly, habeas relief is not available to Petitioner with respect to claims related to his transfer to MCAC and time in administrative segregation without adequate due process. Assertions of past constitutional violations not bearing on one's present confinement should be raised, if at all, in a 42 U.S.C. § 1983 action.[4]

In any event, it appears that even if Plaintiff's claims were properly pleaded, they would nonetheless be time-barred by the statute of limitations. Under Maryland law, Petitioner must have filed the action within three years from the date of occurrence. *See* Md. Cts. and Jud. Proc. Ann. § 5-101. The complained-of transfer and discipline occurred twelve years ago. Thus, Petitioner's claims are barred.

**3. Disciplinary hearing**

Petitioner's claims concerning the hearing and the subsequently invalidated directives are variations on a single theme—that he did not receive the process due to him at the disciplinary proceeding, and he was unconstitutionally deprived of his liberty by revocation of his diminution credits. Unlike the transfer and administrative segregation claims, Petitioner's loss of the

---

[3] According to Petitioner's filings, ECF No. 1 at 4, and the Inmate Locator webpage on the Maryland Department of Public Safety & Correctional Services website, http://www.dpscs.state.md.us/inmate/search.do?searchType= detail&id=85307 (last visited Oct. 20, 2017), Petitioner is currently housed at Western Correctional Institution. .

[4] Indeed, Petitioner has cited suits brought pursuant to § 1983 in support of his first two claims. ECF No. 1 at 8-11.

diminution credits arguably bears on his current custodial status because, if Petitioner's diminution credits are restored, then the term of his current sentence will be impacted.[5]

In prison disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These protections include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id.* at 564–571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985).

Petitioner argues that his prison disciplinary hearing was procedurally unconstitutional because it was held outside the time frame (within 72 hours of violation absent exceptional circumstances) specified in prison regulations. ECF No. 1 at 12-14. Additionally, Petitioner contends that the hearing officer was biased because he denied Petitioner's pre-hearing motion to dismiss the charges based on the untimely nature of the hearing. ECF No. 1 at 14-15. Petitioner also takes issue with the lack of written documentation or audio recordings concerning Ashby's prehearing decision to waive the time requirements. ECF No. 1 at 15-16. Finally, Petitioner argues that the disciplinary hearing and resulting revocation of his diminution credits were unconstitutional because they were undertaken pursuant to two subsequently invalidated directives of the Department of Public Safety and Correctional Services in effect at the time of Petitioner's disciplinary hearing. *See Massey v. Secretary*, 886 A.2d 585 (Md. 2005); ECF No. 1 at 16-18. In *Massey*, the Maryland Court of Appeals invalidated DPSCS Directive 105-4 and

---

[5] Nonetheless, Petitioner acknowledges that, even if his habeas petition is successful, he would not be entitled to immediate release.

105-5,[6] after finding that they had not been adopted in conformance with the Maryland Administrative Procedure Act.

Taking the facts as pleaded, Petitioner has not alleged any violations that amount to a constitutional deprivation. Violation of an internal regulation governing a deadline for Petitioner's disciplinary hearing, without more, is not a due process violation. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1456 (4th Cir. 1990) ("[A] state does not necessarily violate the constitution every time it violates on of its rules."); *Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1995) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due."). And while an extremely lengthy

---

[6] The *Massey* court summarized the content of these directives as follows:

> DPSCSD 105–5 does two things. First, in an appendix, the directive defines the kind of conduct that will subject inmates to discipline. . . . DPSCSD 105–5 also prescribes a procedure for charging offenses. It requires a prompt investigation of conduct that might constitute an offense, preparation of a "rule violation report" containing certain information, review of the report by a supervisor, the shift supervisor, and, if administrative segregation is recommended as a punishment, by the shift commander. . . . DPSCSD 105–5 sets forth the procedures for a hearing before a DOC hearing officer—when an inmate may be found to have waived a hearing, when charges may be dismissed on preliminary review, the authority of a hearing officer to offer an informal disposition, the applicable standard of proof, consideration of an inmate's request for representation or for the attendance of witnesses, preliminary motions, requests for postponement, taking a plea to the charge, the kind of evidence that may be admitted, presentation of a defense, fact-finding and decision by the hearing officer, and imposition of a sanction. The directive also provides for an appeal to the warden, review by the warden, and the options available to the warden.
>
> DPSCSD 105–4, in addition to providing for an initial offer of informal disposition, sets forth a matrix of punishments for the various offenses, taking into account the category of the offense, the inmate's prior rule-violation history, any aggravating and mitigating circumstances involved in the instant violation, and the inmate's adjustment history. Sanctions may include segregation, cell restriction, revocation of good conduct and special project program credits (diminution credits), and loss of visitation and other privileges for various periods of time. Some of those penalties are mandatory for certain offenses. Revocation of diminution credits is expressly authorized by [Md. Code Ann. Corr. Servs.] § 3–709(a) and will usually result in an increase in the inmate's period of incarceration. A finding of a violation, whatever the sanction, may also directly or indirectly affect an inmate's chance for parole or the sanction to be imposed in the event of any further violation.

*Massey*, 886 A.2d at 588-89.

delay in conducting a disciplinary hearing could implicate the Constitution, the roughly two-week delay at issue here certainly does not. *See Gunn v. Williams*, 2014 WL 2964987, *1, 5 (D. Md. June 27, 2014) (rejecting constitutional challenge to delay of more than 30 days); *Williams v. Stewart*, 2014 WL 3385309, *1, 5 (D. Md. July 8, 2014) (same, with 17-day delay); *Stedman v. Maynard*, 2013 WL 5274362, *1, 5 (D. Md. Sept. 17, 2013) (same, with 10-day delay).

Similarly, the court is also not persuaded that the hearing officer's alleged denial of Petitioner's motion to dismiss the rule violations as untimely demonstrates that the officer's bias undermined Petitioner's due process protections. Petitioner does not allege that the hearing officer demonstrated any bias during the hearing itself, made a decision unsupported by evidence, or interfered with Petitioner's ability to present his evidence. Further, the premise of Petitioner's bias argument—that Ashby refused to dismiss the claims based on Petitioner's status as a gang member—is undercut by Petitioner's assertion that the same hearing officer dismissed other charges against Petitioner on timeliness grounds only two days before the hearing at issue in this case. ECF No. 1 at 6-7, 14-15.

Petitioner likewise asserts that the failure to record or transcribe his disciplinary proceeding fails. The only form of recordation that due process requires when revoking prisoner credits is "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken" *Wolff*, 418 U.S. at 563, which Petitioner received. *See Short v. Adisa*, RWT-05-2600, ECF No. 15-5 at 3-7.

Finally, turning to the invalidated directives argument, this is merely a challenge to state-created procedures, which, as noted above, falls short of a federal constitutional claim. Importantly, this court has previously concluded that the Court of Appeal's invalidation of these two directives does not implicate federal due process protections. *Ashby v. Shearin*, 2012 WL

2091150, at *4 (D. Md. June 8, 2012) (rejecting challenge in context of § 1983 action); *Fulford-El v. Maynard*, 2011 WL 2619542, at *4 (D. Md. June 26, 2011) (same). Thus, Petitioner's claims on this ground must fail.

In sum, the record is clear that Petitioner received ample notice of the disciplinary hearing, the nature of the charged violations, and the facts underlying those charges. ECF No. 1-1 at 1. Petitioner does not allege that he was denied an opportunity to be heard at the disciplinary hearing, was prevented from calling witnesses, or that the decision lacked some evidentiary support. Thus, Petitioner received all the process due to him under the constitution.

## CONCLUSION

Accordingly, based upon the foregoing reasons, the habeas corpus relief requested shall be DENIED and the case DISMISSED with prejudice. A certificate of appealability shall not issue and the Clerk shall be directed to close this case.

A separate order follows.

\_\_\_\_\_11/27/17\_\_\_\_\_  _____/S/_____
Date                    Paula Xinis
                        United States District Judge

11